IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL MILTON <br> 10857 Symphony Park Drive <br> Rockville, Maryland 20852 <br><br>     PLAINTIFF <br><br> v. <br><br> WASHINGTON MEDIA INSTITUTE, LLC <br> 1779 Massachusetts Avenue, NW <br> Washington, DC 20036 <br><br> SERVE:  AMOS GELB <br> 1414 44th Street, NW <br> Washington, DC 20007 <br><br> And <br><br> AMOS GELB <br> 1414 44th Street, NW <br> Washington, DC 20007 <br><br>     DEFENDANTS. | Case No.: |

**COMPLAINT**

Plaintiffs Daniel Milton ("Plaintiff"), by and through undersigned counsel, hereby submits his Complaint against Defendants Washington Media Institute, LLC ("WMI") and Amos Gelb ("Gelb") (together, "Defendants")  to recover damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 *et seq*. ("DCMWA"), and the D.C. Wage Payment and Wage Collection Act, D.C. Code §§ 32-1301 *et seq.* ("DCWPA") and for other damages as set forth below.

**PARTIES AND JURISDICTION**

1.    Plaintiff is an adult resident of the State of Maryland.  By participating as

named plaintiff in this action, Plaintiff hereby consents to participate in an action under the FLSA, DCMWA, and DCWPA.

2.     WMI is a limited liability company formed under the laws of the District of Columbia with its principal place of business in the District of Columbia.

3.     At all times relevant, WMI operated continuously as a business entity in the District of Columbia.

4.     More than 50% of Plaintiff's job duties giving rise to this action occurred in the District of Columbia.

5.     At all times during Plaintiff's employment period, Gelb was the primary owner and managing member of WMI.

6.     At all times, Gelb had the power to hire, fire, suspend, and otherwise discipline Plaintiff.

7.     At all times, Gelb supervised Plaintiff's work duties to ensure Plaintiff's work was of sufficient quality.

8.     At all times, Gelb set and controlled Plaintiff's work schedule.

9.     At all times, Gelb set and determined Plaintiff's rate and method of pay.

10.     At all times, Gelb maintained all records relating to Plaintiff or caused such records to be maintained.

11.     At all times, Gelb controlled and were both in charge of the day-to-day operations of the Washington Media Institute.

12.     At all times Defendants performed business operations inside the District of Columbia as well as services outside the District of Columbia including activities in Maryland and Virginia and as such, Defendants were engaged in commerce or in the

production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1)).

13.     On information and belief, each year during Plaintiff's employment, Defendants' gross revenue exceeded $500,000.00 and thus Defendants qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

14.     At all times, Plaintiff was individual employees who, while engaged in his employment duties, performed duties inside the District of Columbia and outside the District of Columbia in Maryland and Virginia and handled, sold, and otherwise worked on goods and materials that were moved in or produced for commerce thus Plaintiff was an individual employee who was engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

15.     Pursuant to the foregoing, at all times, both Defendants were Plaintiff's "employers" for purposes of the FLSA, DCMWA, and DCWPA.

16.     This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. §216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."  Subject matter jurisdiction is invoked under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTS

17.     Plaintiff was employed by Defendants as a "program manager" for the time period of about January 12, 2014 through about April 17, 2015 (about 66 weeks).

18.     While in Defendants' employ, Defendants paid Plaintiff as a salaried employee at the rate of about $37,000.00 (raised in 2015 to approximately $40,000.00).

19.    While employed, Plaintiff actually performed no "managerial" duties. Any ancillary administrative or quasi-managerial duties were minimal and were always under the strict supervision and exacting direction of Defendants.

20.    At no time did Defendants and Plaintiff ever discuss that Plaintiff's salary was intended to pay Plaintiff at a separate non-overtime rate and at a premium overtime rate for hours worked per week in excess of forty (40).

21.    While employed, Plaintiff's exact weekly hours varied from week to week (and from busy season to a less busy season).

22.    While employed, Plaintiff regularly and customarily worked overtime in excess of forty (40) hours per week.

23.    Across his entire period of employ, Plaintiff worked a conservative average of about fifty (50) to fifty-five (55) hours per week.

24.    Plaintiff's conservative approximation considers work duties of about fifty (50) hours per week in the office and about (5) hours per week performing out-of-office duties on the phone and on the computer for Defendants' benefit.

25.    At no time did Defendants ever pay Plaintiff at the Federal and District of Columbia required overtime rate of one-and-one-half (1½) times Plaintiff's regular rate of pay for overtime hours worked each week in excess of forty (40).

26.    Defendants' failure to pay Plaintiff overtime wages at the required rate is a violation of Federal and District of Columbia law.

27.    Further, without excuse or justification, Defendants failed and refused to pay Plaintiff earned wages in the amount of his final paycheck in the approximate amount of $1,541.67.

28.     Defendants' failure to pay wages is not a result of a *bona fide* dispute and is without legal or factual justification or excuse.

29.     While employed, Defendants titled and classified Plaintiff as an independent contractor.

30.     At all times, Plaintiff was an employee and Defendants were his employers as a matter of law regardless of any titles or classifications.

31.     It is well settled that the mere fact that workers are labeled "independent contractors" does not negate the application of the economic realities test. *See Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA].").

32.     Courts have established a six-factor test to determine whether a worker is an employee or an independent contractor, based on "economic reality." These factors, derived from *United States v. Silk,* 331 U.S. 704 (1947) are: (1) the degree of control that the putative employer has regarding the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

33.     At all times, an economic realities evaluation evinces an employer employee relationship for the reasons as follows:

   *     Defendants set and determined Plaintiff's rate and method of pay;

5

\*     Defendants set and decided Plaintiff's schedule and directed Plaintiff as to what job duties to perform and what hours to work;

\*     Defendants at all times had the ability to discipline Plaintiff, fire Plaintiff, adjust Plaintiff's schedule, and adjust Plaintiff's pay rate;

\*     At all times, Defendants supervised Plaintiff's work duties to make sure Plaintiff's job performance was of sufficient quality;

\*     Plaintiff's pay and opportunity for wages was limited to the pay rate, pay method, and schedule were set by Defendants;

\*     Plaintiff was never able to make more money or enjoyed greater financial benefits if Defendants were operating successfully and realizing increased or additional profits;

\*     While Plaintiff was employed by Defendants, Plaintiff's job duties were limited to providing services for Defendants' clients on Defendants' jobs.

\*     Plaintiff worked exclusively for Defendants for a period of more than one year.

\*     The Washington Media Institute was the only company for whom Plaintiff performed work duties for money.

\*     Defendants paid Plaintiff earned wages on a regular set schedule and not on an *ad hoc* basis.

\*     While employed by Defendants, Plaintiff worked more than (40) hours per week.

\*     Plaintiff's job duties were to provide program assistance services for Defendants' clients/interns.

\*     At all times, Defendants were in the business of offering and providing services on which Plaintiff assisted to the public.

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Overtime)

34.     Plaintiff re-alleges and reasserts each and every allegation set forth above as if each were set forth herein.

35.     The FLSA mandates that an employer must pay employees overtime wages in the amount of one-and-one-half (1½) times the employee's regular rate of pay for all overtime hours worked each week in excess of forty (40).

36.     At all times, Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. § 207(a)(1), and both of the Defendants were Plaintiff's "employers" under FLSA, 29 U.S.C. § 207(a)(2).

37.     Defendant, as Plaintiff's employers, were obligated to compensate Plaintiff at the overtime rate of one-and-one-half (1½) times Plaintiff's regular rate for all hours worked per week in excess of forty (40).

38.     As set forth above, while in Defendants' employ, Plaintiff worked many overtime hours each week.

39.     As set forth above, Defendants failed to pay Plaintiff any wages for all overtime hours worked each week in excess of forty (40).

40.     At all times, Defendants had actual knowledge of the FLSA overtime pay requirement and purposely misclassified Plaintiff as an independent contractor in large part so as to willfully attempt to avoid paying Plaintiff at the required FLSA overtime rate.

41.     Defendants' failure and refusal to pay Plaintiff as required by the FLSA

was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff under Count I for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT II
### Violation of D.C. Minimum Wage Act Revision Act of 1992
### (Overtime)

42.     Plaintiff re-alleges and reasserts each and every allegation set forth above as if each were set forth herein.

43.     Plaintiff was Defendants' "employee" and both of the Defendants were Plaintiff's "employer" within the meaning of the DCMWA, D.C. Code §§ 32-1001 *et seq.*

44.     Defendants, as Plaintiff's employers under the DCMWA, were obligated to compensate Plaintiff at the overtime rate of one-and-one-half (1½) times Plaintiff's regular rate of pay for all hours worked per week in excess of forty (40).

45.     As set forth above, while in Defendants' employ, Plaintiff worked many overtime hours each week.

46.     As set forth above, Defendants failed and refused to compensate Plaintiff any wages for all overtime hours worked each week in excess of forty (40).

47.     At all times, Defendants had actual knowledge of the District of Columbia overtime pay requirement and purposely misclassified Plaintiff as an independent contractor in large part so as to willfully attempt to avoid paying Plaintiff at the required

District of Columbia overtime rate.

48.    Defendants' failure and refusal to pay Plaintiff as required by the
DCMWA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff under
Count II, for all unpaid wages in such an amount to be proven at trial, plus liquidated
damages in an equal amount, interest (both pre- and post-judgment), attorney's fees,
costs, and any other and further relief this Court deems appropriate.

**COUNT III**
**DCWPA**

49.    Plaintiff re-alleges and reasserts each and every allegation set forth above
as if each were set forth herein.

50.    Plaintiff was an "employee" and Defendants were Plaintiff's "employers"
within the meaning of the DCWPA.

51.    Under the DCWPA, Defendants were obligated to pay Plaintiff all wages
earned and owed for work that Plaintiff performed.

52.    "Wages" pursuant to DCWPA (DC Code § 32–1301(3)), "includes a: (A)
Bonus; (B) Commission; (C) Fringe benefits paid in cash; (D) Overtime premium; and
(E) Other remuneration promised or owed: (i) Pursuant to a contract for employment,
whether written or oral; (ii) Pursuant to a contract between an employer and another
person or entity; or (iii) pursuant to District or Federal law."

53.    Plaintiff performed work duties for Defendants' benefit as set forth above
for which Defendants failed to pay Plaintiff all wages earned and required by private
contract and/or agreement and by Federal and District of Columbia law.

54.    Defendants owe Plaintiff wages for work duties performed as set forth above.

55.    Defendants' failure to pay Plaintiff wages as set forth above constitutes a violation of Plaintiff's right to receive wages as guaranteed by the DCWPA.

56.    Defendants' failure to pay Plaintiff all wages earned, owed, and required by law as required by the DCWPA was knowing, willful and intentional, was not the result of any *bona fide* dispute between Plaintiff and Defendants, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff under Count III, for all unpaid wages in such an amount to be proven at trial, plus liquidated damages as provided by statute (quadruple damages), interest (both pre- and post-judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

**COUNT IV**
**(VIOLATION OF 26 U.S.C. § 7434)**
**(WMI)**

57.    Plaintiff re-alleges and reasserts each and every allegations set forth above as if each were set forth herein.

58.    In addition to the unpaid wages, Plaintiff has a valid claim against WMI under 26 U.S.C. § 7434. This statute provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." To state a claim for relief under 26 U.S.C. § 7434, Plaintiff must allege facts to prove (1) that WMI issued an information return; (2) that the information

return was fraudulent; and (3) that WMI willfully issued a fraudulent information return.

59.     Plaintiff satisfies the first element of this claim because WMI issued Plaintiff an IRS Form W-9 (for contractors) rather than the proper IRS Form W-2 (for employees) while Plaintiff was in Defendants' employ.

60.     Issuing an IRS Form W-2 or 1099 constitutes issuing an information return.

61.     The second and third elements govern the proof of the intent of WMI's statutory violation.  The statute sets forth that, to be actionable, WMI violation be fraudulent.  This does not translate to "common law fraud" or carry the same pleading elements of fraud.  Rather, "fraudulent," in the instant context, means that WMI filed a false return and the filing of the false return was not an error, but rather an "intentional wrongdoing."

62.     Here, WMI knew that Plaintiff was, at all times an employee who should have been an employee but was misclassified as a contractor.

63.     At all times, WMI knew that it should have issued a IRS Form W-2 to Plaintiff rather than a IRS Form 1099.

64.     WMI misclassified Plaintiff and then issued him a 1099 rather than a W-2 because doing so saved it substantial FICA and related payroll taxes - - passing these taxes and costs to Plaintiff.

65.     WMI acted willfully to issue an incorrect and inappropriate IRS information return to Plaintiff so (1) to avoid paying the employer share of FICA and related employer tax withholdings; and (2) to reduce overhead and gain an unfair

competitive advantage against industry competitors that adhere to their employer related tax obligations.

WHEREFORE, WMI is liable to Plaintiff under Count IV in the actual damages incurred or statutory damages in the amount of $5,000.00 for each fraudulent information return (whichever is higher), plus reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

Respectfully submitted,

_____

Gregg C. Greenberg, Bar No. MD17291
Jason D. Friedman, Bar No. MD18898
Zipin, Amster & Greenberg, LLC
836 Bonifant Street
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax: 301-587-9397
Email: ggreenberg@zagfirm.com
        jfriedman@zagfirm.com

*Counsel for Plaintiff*